Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>GEORGE L. DOMÍNGUEZ ALEJANDRO<br><br>Recurrido | TA2026CE00029 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Crim. Núm.:<br>E1VP202502253<br>E1VP202502254<br>E1VP202502255<br>E1V`P202502256<br><br>Por: Art. 133(a) y 133(b) del CP(dos cargos); y Art. 53(a) de la Ley Núm. 57-2023 |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de febrero de 2026.

Comparece ante nos el Pueblo de Puerto Rico ("el Pueblo" o "el Peticionario") mediante *Petición de Certiorari* presentada el 9 de enero de 2026. Nos solicita la revocación de la *Resolución* emitida el 23 de diciembre de 2025, notificada el 29 de diciembre del mismo año*,* por el Tribunal de Primera Instancia, Sala Superior de Caguas ("foro primario" o "tribunal *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la *Moción para Presentación de Testimonio Mediante el Sistema de Circuito Cerrado en Virtud de la Regla 131.1 de Procedimiento Criminal* presentada por el Ministerio Público*,* en la cual solicitó que la menor ASPR testificara en la vista preliminar mediante el mecanismo de circuito cerrado. En consecuencia, tribunal *a quo* fundamentó su denegatoria esbozando que Ministerio Público no

presentó prueba suficiente que llevara a determinar que la menor sufriría un disturbio emocional serio que impediría comunicarse efectivamente de tener que testificar frente al imputado durante la vista preliminar.

Por los fundamentos que expondremos a continuación, **expedimos** el auto de *certiorari* y **revocamos** el dictamen recurrido.

**I.**

Conforme se desprende del expediente, por hechos ocurridos el 15 de diciembre de 2025, el Ministerio Público presentó cuatro (4) denuncias contra George Domínguez Alejandro ("señor Domínguez Alejandro" o "Recurrido"). La primera *Denuncia* se radicó por violación al Artículo 133 del Código Penal de Puerto Rico, sobre actos lascivos, 33 LPRA sec. 5194, la cual establece lo siguiente:

> El referido imputado George L. Dom[í]nguez allá en o para el día 15 de diciembre de 2025 y en JUNCOS; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de CAGUAS, a propósito y con conocimiento, sin intentar consumar el delito de agresión sexual (Art. 130 del Código Penal), sometió a la menor A.S.P.R., a un acto que tendió a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado, teniendo la víctima ocho años de edad, consistente en que luego de darle a comer un chocolate, la tocó en el pecho y en el área de la vagina por encima de la ropa.
>
> HECHOS CONTRARIO A LA LEY.[1]

La segunda *Denuncia* sometida imputa violación al Artículo 123-B del Código Penal de Puerto Rico, *supra*, sobre corrupción de menores, y la misma establece lo siguiente:

> El referido imputado George L. [Domínguez] allá en o para el día 15 de diciembre de 2025 y en JUNCOS; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de CAGUAS, a propósito y con conocimiento, intoxicó a la menor A.S.P.R., de ocho años de edad consistente en que le dio a comer un chocolate el cual contenía CANNABIS. Arrojando la menor positivo a la sustancia en la

---

[1] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 1.

prueba toxicológica realizada en el Hospital Pediátrico Universitario, donde recibió asistencia médica.

HECHOS CONTRARIO A LA LEY.[2]

Consta en el expediente, que la tercera *Denuncia* es por infracción al Artículo 53-A de la Ley Núm. 53-2023, conocida como la *Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores,* 8 LPRA sec. 1734, que dispone lo siguiente:

> El referido imputado George L. [Domínguez] allá en o para el día 15 de diciembre de 2025 y en JUNCOS; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de CAGUAS, a propósito y con conocimiento, causó daño físico y [puso] en riesgo de sufrir daño a la salud mental, emocional e integridad física [a] la menor A.S.P.R. de ocho años de edad quien es su vecina, consistente en que le dio a comer un chocolate con CANNABIS.

HECHOS CONTRARIO A LA LEY.[3]

Por último, la cuarta *Denuncia* imputa una infracción violación al Artículo 53-B de Ley Núm. 53-2023, *supra,* la cual lee como sigue:

> El referido imputado George L. [Domínguez] allá en o para el día 15 de diciembre de 2025 y en JUNCOS; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de CAGUAS, a propósito y con conocimiento, causó daño físico y [puso] en riesgo de sufrir daño a la salud mental, emocional e integridad física [a] la menor A.S.P.R. de ocho años de edad quien es su vecina, consistente en que cometió actos lascivos contra la menor luego de haberla intoxicado con CANNABIS.

HECHOS CONTRARIO A LA LEY.[4]

Se desprende de los autos que, tras la determinación de causa probable para arresto, la vista preliminar se pautó para el 23 de diciembre de 2025. Ante este cuadro, el 19 de diciembre de 2025, el Ministerio Público radicó *Moción para presentación de Testimonio Mediante el Sistema televisivo de Circuito Cerrado en*

---

[2] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 1.
[3] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 1.
[4] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 1.

*Virtud de la Regla 131.1 de Procedimiento Criminal.*[5] Mediante este escrito, solicitó que tribunal *a quo* señalara una vista de necesidad, y, a su vez, ordenara que la menor ASPR, víctima en el presente caso, vertiera su testimonio en el sistema de circuito cerrado.

Evaluada la petición del Ministerio Público, el foro primario emitió *Orden* el 22 de diciembre de 2025, notificada ese mismo día, en la que concedió hasta el 23 de diciembre de 2025 al señor Domínguez Alejandro para expresarse en torno al petitorio incoado por el Ministerio Público.[6] De otro lado, en igual fecha, el foro primario señaló la vista de necesidad para el 23 de diciembre de 2025.[7]

Así las cosas, llegado el 23 de diciembre de 2025, se llevó a cabo la vista de necesidad.[8] Surge del expediente que el Ministerio Público presentó como prueba el testimonio de la señora Sheila Michelle Robles González, madre de la menor. Asimismo, se interrogó en el despacho del juez a la menor ASPR. Tras someter su prueba y esbozar sus respectivos argumentos finales, el foro primario denegó la petición del Ministerio Público en corte abierta.

Establecido lo anterior, el 29 de diciembre de 2025, el foro *a quo* notificó su determinación por escrito mediante *Resolución.*[9] Al amparo de esta, el tribunal *a quo* fundamentó que: "el Ministerio Público no presentó prueba suficiente para establecer que existe la probabilidad de que la menor sufra un disturbio emocional serio que le podría impedir comunicarse efectivamente de tener que testificar frente al imputado durante la vista preliminar".[10]

---

[5] Véase, SUMAC TA, Entrada Núm. 1, Anejo 3.
[6] Véase, SUMAC TA, Entrada Núm. 1, Anejo 6.
[7] Véase, SUMAC TA, Entrada Núm. 1, Anejo 5.
[8] Véase, SUMAC TA, Entrada Núm. 1, Anejo 2.
[9] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 2.
[10] Véase, SUMAC TA, Entrada Núm. 1, Apéndice 2.

Inconforme, el 9 de enero de 2026, el Peticionario presentó el recurso de epígrafe en el que formuló el siguiente señalamiento de error:

> El Tribunal de Primera Instancia incurrió en un craso error de derecho y en un claro abuso de discreción al denegar la solicitud del Ministerio Público para que la menor víctima de abuso sexual en el presente caso prestara su testimonio mediante el sistema de circuito cerrado durante la vista preliminar de conformidad con la Regla 131.1 de Procedimiento Criminal, 34 LPRA Ap. II. Ello, a pesar de que la prueba desfilada en la vista de necesidad estableció la probabilidad de que el hecho de testificar en presencia del recurrido le ocasionaría un disturbio emocional que podría afectar su capacidad de comunicarse de forma efectiva y comprometer directamente su bienestar emocional y físico.

Acompañó su petición junto a documento intitulado *Urgente Solicitud en Auxilio de Jurisdicción.* Evaluado los planteamientos esbozados, el 9 de enero de 2026, esta Curia emitió *Resolución* en la cual declaró *Ha Lugar* la solicitud en auxilio de jurisdicción y, consecuentemente, ordenó la paralización de los procedimientos ante el foro primario. Cónsono con lo antes expuesto, se le concedió al Recurrido un término de diez (10) días para exponer su posición en torno al recurso.

Por su parte, en igual fecha, el 9 de enero de 2026, el Pueblo presentó *Moción Informativa Sobre Objetos Presentados Físicamente y Solicitud de Autorización de Regrabación como Método de Prueba.* Mediante esta, notificó que había entregado en la Secretaría de este foro revisor la regrabación de la vista de necesidad celebrada. Cabe destacar que la misma fue aceptada por este Tribunal mediante *Resolución* emitida el 12 de enero de 2026.

Oportunamente, el 20 de enero de 2026, el Recurrido compareció mediante escrito intitulado *Memorando en Oposición a Expedición a Certiorari.*

Con el beneficio de la comparecencia de ambas partes, y de la prueba que obra en el expediente, incluida la regrabación de la vista de necesidad celebrada el 23 de diciembre de 2025, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

### B. Vista Preliminar

Toda persona imputada de un delito grave tiene derecho a que se celebre una vista preliminar. Véase Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R.23. *Pueblo v. Guadalupe Rivera*, 206 DPR 616, 623 (2021). El propósito de la vista preliminar es evitar que un ciudadano se someta arbitraria e injustificadamente a los rigores de un juicio en su fondo. *Pueblo v. Pérez Delgado*, 211 DPR 654, 664 (2023). Por otro lado, la vista preliminar no constituye un "minijuicio", ni tiene el propósito de establecer la culpabilidad del imputado más allá de duda razonable. *Pueblo v. Guadalupe Rivera*, supra. Su objetivo es instituir un paso previo a la acusación, en el cual el Ministerio Público tiene la obligación de demostrar que existe causa probable para procesar a un imputado por la comisión de un delito grave. *Pueblo v. Andaluz Méndez*, 143 DPR 656, 661 (1997). Esto es, que se presente prueba que permita a un tribunal emitir una determinación de que existe causa probable en cuanto a dos aspectos, a saber: 1) que el delito grave se cometió; y 2) que la persona imputada lo cometió. *Pueblo v. Guadalupe Rivera, supra,* pág. 624 citando a *Pueblo v. Negrón Nazario,* 191 DPR 720, 732 (2014).

El Ministerio Público puede acusar por un delito grave solo en los casos en que el foro primario determina que hay causa en esta etapa. No obstante, "una vista preliminar no se limita necesariamente a la determinación de causa o no causa probable por el delito imputado en la denuncia". *Pueblo v. Guadalupe Rivera, supra*. Como resultado, la vista preliminar puede culminar de tres maneras: 1) la determinación de causa probable para acusar por el delito por el cual se determinó causa probable para arresto; 2) la determinación de que no existe causa probable para acusar por ningún delito; o (3) la determinación de causa probable para acusar por un delito distinto o menor al que el Fiscal entiende procedente. *Íd.* Cabe aclarar que la determinación que se realiza en la vista preliminar no es una adjudicación final en los méritos del caso, ya que la adjudicación final, corresponde propiamente a la etapa del juicio. *Pueblo v. Pérez Delgado, supra*, pág. 665.

Cónsono con lo antes expuesto, vale destacar que, en la vista preliminar, la persona imputada de delito cuenta con una serie de **derechos estatutarios** que le cobijan, entre estos, contrainterrogar testigos que declaren en su contra y presentar prueba a su favor. *Pueblo v. Vega*, 148 DPR 980, 987 (1999).

### C. Derecho a la Confrontación

En nuestra jurisdicción, "[u]na de las garantías fundamentales que asegura nuestro ordenamiento constitucional es el derecho de un acusado a confrontar o carearse con quienes le señalen como partícipe en la comisión de un acto delictivo". *Pueblo v. Lugo López*, 214 DPR 660, 672 (2024). Véase la Sexta Enmienda de la Constitución de Estados Unidos, Enmda. VI, Const. EE. UU., LPRA, Tomo 1 y la Sec. 11 del Art. II de la Constitución de Puerto Rico LPRA, Tomo 1.

Esta cláusula constitucional recoge el principio fundamental de colocar al acusado en posición de poder enfrentar a sus acusadores. *Pueblo v. Cruz Rosario*, 204 DPR 1040, 1047–1048 (2020) citando a *Pointer v. Texas*, 380 US 400, 405 (1965). Esto último se encuentra amparado en el debido proceso de ley de los acusados en cuanto a que éstos tengan la oportunidad de defenderse de las acusaciones del Estado. *Pueblo v. Zeno Torres*, 211 DPR 1, 16 (2022). No empece a lo anterior, el derecho constitucional de los acusados a carearse con la prueba de cargo **opera en etapa de juicio**. *Pueblo v. Santiago y en interés del menor FLR*, 205 DPR 7, 22 (2020).

Por otro lado, el derecho constitucional a la confrontación contiene tres (3) vertientes procesales, a saber: "(1) el derecho al careo o confrontación cara a cara con los testigos adversos; (2) el derecho a contrainterrogar, y (3) el derecho a que se excluya la prueba de referencia que intente presentar el Ministerio Público". *Pueblo v. Zeno Torres, supra.*

### D. La Regla 131.1 de Procedimiento Criminal

En nuestro ordenamiento jurídico "[e]l uso del circuito cerrado ha sido reconocido en situaciones en las cuales el testigo es un menor o una víctima de agresión sexual, aunque **sujeto al crisol de que se haya probado la necesidad de valerse de este método alterno** (énfasis en el original). *Pueblo v. Lugo López, supra*, 674. Por ello, dicho mecanismo se reconoció estatutariamente por virtud de la Regla 131.1 de Procedimiento Criminal, 34 LPRA Ap. II.

La aludida disposición establece lo siguiente:

> En determinadas condiciones y circunstancias, el interrogatorio de la víctima de delito contra la indemnidad sexual o el de la víctima de los delitos tipificados en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, o la víctima o testigo menor de edad, podrá llevarse a cabo según el procedimiento

aquí establecido. Disponiéndose, que para efectos de esta Regla y las Reglas 131.2 y 131.3, el término menor significa toda persona que no haya cumplido dieciocho (18) años de edad y toda persona mayor de dieciocho (18) años que padezca incapacidad o impedimento mental que haya sido determinado judicialmente con anterioridad o establecido mediante prueba pericial o por estipulaciones de las partes. Igualmente, los efectos de esta Regla y las Reglas 131.2 y 131.3, también aplicarán a las víctimas mayores de edad de los delitos contra la indemnidad sexual contemplados en el Capítulo IV del Título I, Delitos contra la Persona, del Código Penal de 2004, o por la tentativa de cualquiera de éstos, que sea testigo o declarante; y a las víctimas de los delitos tipificados en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica".

**(1) Condiciones**. — El tribunal, a iniciativa propia o a solicitud del ministerio público, o del testigo o víctima menor de edad, podrá ordenar que la víctima o testigo que sea menor de edad testifique fuera de sala durante el proceso mediante la utilización del sistema televisivo de circuito cerrado de una o dos vías, si concurren las siguientes condiciones:

(a) El testimonio del menor es prestado por éste durante el proceso judicial;

(b) el juez ha determinado previamente durante el proceso que debido a la presencia del acusado existe la probabilidad de que el menor, aunque competente para declarar, sufra disturbio emocional serio que le impida comunicarse efectivamente, y

(c) al momento de declarar el menor esté bajo juramento o afirmación con las debidas advertencias.

**(2) Personas que pueden estar presentes en el lugar donde preste testimonio el menor o la víctima de delito contra la indemnidad sexual o la víctima de cualquiera de los delitos tipificados en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica". —**

Sólo se permitirá la presencia de las personas que se enumeran a continuación, en el lugar donde testifique el menor o víctima de delito contra la indemnidad sexual o la víctima de cualquiera de los delitos tipificados en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica":
(a) El fiscal a cargo del caso.
(b) El abogado de la defensa.

(c) Los operadores del equipo de circuito cerrado.

(d) Cualquier persona de apoyo, según se define este término en la Regla 131.3, que determine el tribunal.

(e) El intercesor o intercesora, según se define este término en el inciso (g) del Artículo 1.3 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica".

**(3) Determinación de necesidad.** — Para determinar si existe la probabilidad de que el declarante sufra disturbio emocional serio que le impida comunicarse efectivamente de tener que testificar frente al acusado, el juez podrá observar e interrogar al declarante dentro o fuera del tribunal, así también podrá escuchar testimonio de los padres, encargados, custodios, tutor o defensor judicial, en caso de que sea menor de edad, y cualquier otra persona, a discreción del juez, que contribuya al bienestar de la víctima, incluyendo a la persona o personas que hayan intervenido con el declarante en un ambiente terapéutico por la naturaleza del delito cometido:

(a) El acusado, el abogado de la defensa y el fiscal a cargo del caso tendrán derecho a estar presentes cuando el juez escuche testimonio para determinar si autoriza que la víctima testifique fuera de la sala donde se ventila el proceso, mediante el sistema de circuito cerrado de una o dos vías.

(b) Si el juez decide observar o interrogar al declarante perjudicado para hacer la determinación acorde con la cláusula (a) de este inciso, estarán presentes el abogado de la defensa y el fiscal a cargo del caso.

**(4) Aplicabilidad**. — Las disposiciones contenidas en esta regla no son aplicables cuando el acusado comparece por derecho propio (pro se).

**(5) Identificación del acusado.** — Para la identificación del acusado por la víctima se requerirá la presencia de ambos en sala, después que el declarante haya testificado.

### E. Estándar de Revisión de Apreciación de Prueba

En nuestro ordenamiento jurídico, la "tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 792 (2020). Esto "incluye, entre otros factores, ver el

comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Íd,* citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Los tribunales apelativos "no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos". *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

Por ello, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 844, 917 (2016). Sin embargo, esa deferencia descansa en un marco de discreción *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020). La discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Así que, ese juicio discrecional "no es en función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Santa Aponte v. Srio. Del Senado,* 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario "actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

Se dice que el tribunal incurrió en un error manifiesto "cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal". *Gómez Márquez et al. v. El Oriental,* supra*,* pág. 793. Esto implica que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Íd.*

Dicho estándar de revisión, "restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en los que de la prueba admitida *no exista base suficiente que apoye tal determinación"*. *Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). (Énfasis en original).

Por otro lado, el juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra,* pág. 782. De otra parte, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable (citas omitidas). *Pueblo v. Sanders Cordero,* 199 DPR 827, 841 (2018).

**III.**

En el presente caso, el Pueblo nos solicita la revocación de la determinación del tribunal *a quo* mediante la cual denegó la solicitud al amparo de la Regla 131.1 de Procedimiento Criminal, *supra,* instada por el Ministerio Público. El aludido petitorio se radicó con el fin de que la menor ASPR vertiera, en la vista preliminar, su testimonio a través del sistema de circuito cerrado. En síntesis, el Peticionario arguye que el foro primario incurrió en un craso abuso de discreción y error de derecho al concluir que el Ministerio Público no presentó prueba que demostrara la probabilidad que de la menor testificar en presencia del Recurrido, le ocasionaría un disturbio emocional que podría

afectar su capacidad de comunicarse de forma efectiva, además de comprometer directamente su bienestar emocional y físico. Veamos.

Surge del expediente y de la regrabación de los procesos, que el foro primario celebró una vista de necesidad el 23 de diciembre de 2025, con el propósito de atender la moción al amparo de la Regla 131.1 de Procedimiento Criminal, *supra*, que tenía ante sí. En la aludida vista, el Ministerio Público presentó, en primera instancia, el testimonio de la señora Sheila Michelle Robles González ("señora Robles González"), madre de la menor ASPR.

A preguntas de la fiscalía, la señora Robles González declaró que, desde que ocurrió el incidente que motiva el presente caso, su hija "**se observa nerviosa, manifiesta que no desea ver al acusado, eh... en las noches tiene un comportamiento que no tenía, se levanta, yo tengo que calmarla**".[11] Atestó que la menor ha estado durmiendo "en la residencia de mi abuela", pues "**se siente incómoda porque está cerca de la residencia y recuerda los hechos**".[12] A su vez, la señora Robles González declaró que, respecto a testificar frente al Recurrido, la menor le ha manifestado que: "**siente miedo, siente temor, no se siente segura observándolo**... yo entiendo eh, que ella no va a poder testificar en presencia de él, porque lo ha manifestado, verdad, verbalmente".[13] La testigo reiteró que la menor le comunicó que "**siente miedo que no lo quiere observar, no quiere verlo, ella dice que no**".[14]

Luego de estas declaraciones, la representación legal del Recurrido inquirió y dirigió su línea de preguntas en torno al

---

[11] Véase, Anejo 6-B, Regrabación de la vista de necesidad celebrada el 23 de diciembre de 2025, min. 5:04-5:20.
[12] *Íd.*, min. 5:37-5:45.
[13] *Íd.*, min. 6:00- 6:25.
[14] *Íd.*, min. 7:26- 7:32.

conocimiento de ésta sobre las facilidades físicas, particularmente, las salas de los tribunales y la seguridad que se le provee a los testigos en corte.[15] Acto seguido, el honorable juez que presidió los procedimientos, formuló varias preguntas a la señora Robles González respecto a su conocimiento en torno al sistema de circuito cerrado y la posibilidad de que la menor testifique en la vista sin presencia del público.[16] Además, cuestionó si la menor se encontraba recibiendo algún tipo de tratamiento psicológico.[17] En respuesta a ello, la señora Robles González contestó en la negativa. En específico, a preguntas del honorable juez, la señora Robles González declaró lo siguiente:

> JUEZ: Pero para manejar el estrés, sí alguno, que le pueda provocar comparecer a un tribunal y declarar en presencia del imputado, específicamente para eso, ¿está recibiendo algún tipo de servicio?
> ROBLES: No.
> JUEZ: ¿No se ha buscado, no se ha auscultado ayuda profesional para tratar de manejar esto?
> ROBLES: Solamente para un psicólogo
> JUEZ: ¿Solamente para un psicólogo?
> ROBLES: Un psicólogo, sí.
> JUEZ ¿Y desde cuando está yendo para ese psicólogo?
> ROBLES: No es que tengo... como esto es reciente tengo que sacar la cita.
> JUEZ: ¿Y el propósito para ir al psicólogo cuál es?
> ROBLES: Ayudarla con el proceso, verdad, para que ella...
> JUEZ: ¿O sea, que la contestación a mi pregunta es que no se ha hecho, sino que se coordinó?
> ROBLES: Si
> JUEZ: ¿Y cuándo es la cita?
> Robles: No, no tengo que coordinar tengo que llamar.
> JUEZ: Ah, que no lo ha hecho, que no lo ha hecho.[18]

A consecuencia de la intervención del magistrado, el fiscal y la defensa realizaron algunas preguntas adicionales relacionadas al tratamiento psicológico de la menor. Según adelantado, la señora Robles González reiteró que, a la fecha, no había sacado cita para ello.[19]

---

[15] *Íd.*, min. 8:05-10:12.
[16] *Íd.*, min. 11:30- 13:54.
[17] *Íd.*, min. 13:55-15:08.
[18] *Íd.*, min. 14:18-14:59.
[19] *Íd.*, Min. 15:08-16:30

Una vez culminado el testimonio de la señora Robles González, el juez solicitó que se entrevistara a la menor en su despacho. Así pues, tras algunas preguntas introductorias realizadas por el juez, la menor manifestó que tenía ocho (8) años, que no recordaba la fecha de su cumpleaños años y, además, abundó sobre la composición de los miembros de su familia.[20] Por su parte, el Ministerio Público en su interrogatorio, procedió a realizarle preguntas a la menor en torno a cómo ésta se sentiría si volviera a ver al Recurrido:

> FISCAL: Y entonces te pregunto: ¿cómo tú te sentirías de volver a ver a Georgie?
> ASPR: **Mal.**
> FISCAL: ¿Y por qué... ¿Mal dijiste? ¿Por qué te sentirías mal?
> ASPR: **Porque... no lo quisiera ver.**
> FISCAL: ¿Y por qué no? Si le puedes explicar al juez.
> ASPR: **Porque es que... me da miedo.**
> FISCAL: ¿Y por qué es que te da miedo, si lo vuelves a ver?
> ASPR: **Por...porque él... Él me un poqui... me da miedo porque hizo una cosa mala que no puede el no puede hacer.**
> FISCAL: Bien. Entonces, [ASPR] ese miedo que tú sientes, ¿verdad? Te... Te impediría o no te dejaría hablar de lo que pasó ese día.
> ASPR: No.
> FISCAL: ¿No?
> ASPR: Me dejaría.
> FISCAL: Te dejaría, sí. Entonces, si George está en el mismo lugar que tú, tú, ¿cómo tú podrías hablar de lo que pasó?
> DEFENSA: No, pero yo tengo objeción. Ya ella contestó que ella podría contestar, podría hablar si él estuviese.
> JUEZ: No, pero puede contestar la pregunta. Puedes contestarla.
> ASPR: Mmm... **Me sentiría mal porque no quisiera hablar delante de él.**
> FISCAL: Bien. Cuando tú dices que no quisieras hablar delante de él, ¿te refieres a quién? ¿Quién es él?
> ASPR: Georgie.
> FISCAL: Georgie. Y ¿por qué no pudieras hablar eso delante de Georgie?
> DEFENSA: No, no. Eso es *misleading*.
> ASPR: Me da como que...
> JUEZ: No, no contestes todavía. No.
> DEFENSA: Dijo que no quisiera, no dijo que no podría.

---

[20] Véase, Anejo 6-A, Regrabación de la vista de necesidad celebrada el 23 de diciembre de 2025, min. 0:00-6:05.

JUEZ: "No quisiera hablar delante de "Georgie" fue la expresión que utilizó.
FISCAL: Bien. [ASPR], ¿por qué no quisieras hablar del frente de Georgie?
ASPR: **Porque me da como que, eh, miedo. Y…. no me gustaría.**
FISCAL: Bien. Y… Sin embargo, si para hablar de lo que pasó ese día con Georgie, si él estuviera en otro lugar distinto al lugar donde tú hablarías de lo que pasó, ¿cómo tú te sentirías?
ASPR: Mejor.
FISCAL: ¿Mejor por qué?
ASPR: **Porque ahí no estuviera "esto" hablando frente a él y ahí no, no estuviera él** (énfasis y transcripción nuestra).[21]

Tras esta intervención del Ministerio Público, la defensa le realizó algunas preguntas a la menor relacionadas a su conocimiento de cómo son las salas de los tribunales, sobre el testimonio que ésta vertería y cómo ésta se sentía.[22] Subsiguientemente, el juez procedió a formularle una serie de preguntas a la menor. Entre estas, destacamos las siguientes:

Juez: [ASPR], discúlpame, me lo voy a aprender. [ASPR]. No declare delante de Georgie, declare aparte. ¿Entiendes eso?
ASPR: Sí.
JUEZ: Y eso es lo que hemos estado discutiendo hoy. Y yo tengo que decidir si permito eso o no. **Yo soy el que doy el permiso. [ASPR] va a declarar delante de Georgie, o [ASPR] no va a declarar delante de Georgie, lo va a hacer en otro cuarto con una cámara**. ¿Eso lo entiendes bien?
ASPR: Sí.
JUEZ: Y eso es lo que estamos hablando en este caso, en el día de hoy. Eso es lo que yo tengo que decidir ahora. Entonces, **como el fiscal me pidió que tú no declararas delante de Georgie y que lo hicieras en un cuarto, ¿tú estás de acuerdo con eso que está pidiendo el fiscal?**
**ASPR: Sí.**
JUEZ: ¿Y por qué yo tengo que decidir, por qué yo tengo que autorizar, por qué yo tengo que dar el **permiso para que tú no declares** delante de Georgie, sino en un cuarto? **¿Por qué tú me estás pidiendo eso?** ¿Por qué yo no puedo decir, no, [ASPR], **vas a declarar delante de Georgie**?
ASPR: **Porque es que… tengo como que miedo.**
JUEZ: ¿a qué?
ASPR: **Que él diga que no, que no es verdad** y… Por eso me gustaría estar aparte, en otro cuarto.
JUEZ: **Y si tuvieras que declarar, si no me convencieras, porque me tienes que convencer a**

---

[21] *Íd.*, min. 8:00-10:35.
[22] *Íd.*, min. 11:35-16:55

**mí**, si no me convenciera... [ASPR], tú no me convences, vas a declarar delante de Georgie, ¿qué puede pasar?

ASPR: No sé. No sé.

JUEZ: **¿cómo te sentirías si yo te obligo a declarar delante de Georgie?**

ASPR: **<u>Un poco mal. Un poco mal.</u>**

JUEZ: Un poco mal, ¿a qué te refieres con un poco mal? Antes de que me contestes esa pregunta, ¿te estoy molestando? ¿No?

ASPR: No.

JUEZ: Te hemos tratado bien, ¿verdad? Quiero estar seguro.

ASPR: Si.

JUEZ: Qué bueno. Eso es importante saberlo para mí. Te sentirías un poco mal si yo te obligo a declarar delante de Georgie. O sea, que si el fiscal, estando Georgie ahí también, vamos a pensar que estamos ya en la sala y tú estás sentada ahí y Georgie está en algún punto y el fiscal te hace preguntas sobre lo que pasó en este caso, **¿tú te sentirías un poco mal?**

ASPR: **<u>Sí.</u>**

JUEZ: Y, ¿a qué te refieres con un poco mal? ¿Podrías contestar las preguntas del fiscal?

ASPR: Sí.

JUEZ: ¿Aunque Georgie esté presente? ¿Aunque Georgie esté ahí?

ASPR: Mmm...Más o menos. Más o menos.

JUEZ: ¿Sí, crees que puede? Sí. Okey, vamos a hacerlo de esta manera. Fiscal, perdón, quiero hacer... un momento. ¿Te puedes sentar delante del fiscal?

 [...]

Si estuviéramos en la sala, allá, yo estaría más o menos sentado aquí, tú estarías sentada ahí, Georgie estaría...se supone, si viene, porque no lo sé. Si viene, vamos a asumir que sí, que está aquí presente en la sala, en algún punto, digamos que es la técnico. Puedes ir un poco más para acá. Y el fiscal te haría preguntas desde donde está parado allá. Vamos a pensar que ella es Georgie. Si el fiscal así te hace preguntas, ¿puedes contestarla, aunque Georgie esté ahí?

ASPR: Bueno, sí.

JUEZ: ¿Sí podrías?

ASPR: Creo que sí.

JUEZ: Aunque Georgie esté ahí. Okay.

ASPR: Sí.

JUEZ: Y si mientras **tú declaras, hay más gente**... Esto no me lo han pedido, pero yo puedo hacer la pregunta. Hay una gente en el público, pero cuando tú declares, yo saco a todas esas personas, solamente dejo a papá, mamá y si hay algún familiar de Georgie, lo puedo permitir. ¿Podrías declarar?

ASPR: Bueno, sí.

JUEZ: ¿Sí?

ASPR: Sí.

JUEZ: Así que, el fiscal parado más o menos, más o menos ahí donde está parado. Y yo por aquí. Y el licenciado estaría en otro... en otra mesa por ahí

sentado. Y ella es Georgie, si te hacen preguntas, ¿tú delante de Georgi me puedes decir lo que pasó?
ASPR: Sí.
JUEZ: ¿Sí puedes?
ASPR: Sí.
JUEZ: Delante de Georgie, aunque Georgie esté ahí sentado, callado, sin hablar, porque mientras tú hables, él no puede hacer nada. ¿Tú puedes contestar las preguntas?
ASPR: Sí.
JUEZ: ¿Y te gustaría que yo sacara a todo el público de la sala, excepto a tu papá, mamá y algún familiar de Georgie, pero más nadie esté presente?
ASPR: Sí.
JUEZ: Veo. Pero, entiendes bien lo que te estoy diciendo, ¿verdad?
ASPR: Sí.
JUEZ: Eso no es lo que me está pidiendo el fiscal, porque el fiscal lo que me ha pedido es, el fiscal Millán es que tú estés en otro cuarto. Y ahora yo te estoy diciendo, si Georgie no es... si tú no estás en otro cuarto, estás en el mismo salón, en la misma sala de Georgie, sentado Georgie allí callado, y el fiscal te está haciendo preguntas, ¿tú puedes contestar las preguntas, aunque Georgie esté ahí?
JUEZ: ¿Sí? Y luego el licenciado te puede hacer preguntas a ti. Estando Georgie presente, ¿puedes contestarle las preguntas del licenciado?
ASPR: Sí.
JUEZ: Entonces, no tenemos que ir a otro cuarto. Tú puedes declarar aquí en la sala, ¿verdad que sí? Allí hay unos alguaciles. Georgie no, ni Georgie ni nadie te puede hacer nada, porque si te hace algo, se mete en un problema conmigo, yo lo mando a arrestar. Así que eso nada va a pasar. Pero quiero estar bien seguro de que me has entendido las preguntas. ¿O hay alguna pregunta que yo te he hecho que no me has entendido?
ASPR: No.
JUEZ: Todo lo que te he preguntado me lo has entendido.
ASPR: Sí (énfasis y transcripción nuestra).[23]

Posterior a este intercambio, se retomaron los procedimientos en la sala del foro primario. Así las cosas, tras las partes someter el caso, el tribunal *a quo* denegó la moción al amparo de la Regla 131.1 de Procedimiento Criminal, *supra* instada. Al emitir dicho dictamen, el juez realizó la siguiente expresión:

Tengo que decir, eh... hacer varios apuntes. Primero ciertamente el tribunal toma en consideración y le da mucho peso a la edad de los testigos cuando se presentan mociones bajo la Regla 131.1 y este caso

---

[23] *Íd.*, min. 21:04-26:40.

hablamos de una testigo de ocho años. Eh, tenemos que decir también que, en efecto, si la menor mencionó que podría tener miedo o algo de miedo en declarar en presencia del imputado. Pero, pero también tenemos que señalar que, cuál es el criterio que establece la Regla 131.1 al momento de celebrar esta vista, ¿qué es lo que tiene que demostrar el Ministerio Público? Que es la probabilidad de que el testigo, en este caso una menor... sufra un disturbio emocional serio en caso de que tenga que declarar en presencia del imputado. Eso es lo que establece la Regla 131.1.

Y en este caso en particular, aunque es cierto que la menor ha dicho que podría tener miedo, en... o algo de miedo, de la misma forma y de, y de diferentes maneras se le preguntó... Se le explicó primero la dinámica de, de una vista.

De hecho, hicimos un ejercicio de cómo estaría ubicada la menor, desde dónde se le harían las preguntas. Y específicamente y en varias ocasiones, no conté cuántas, pero quizás 5 veces o 6, se le preguntó específicamente en ese ejercicio si ella podría declarar estando, eh, a quien ella identificó como Georgie. Y en ese ejercicio dijo constantemente: "Sí, sí, sí".

En ningu... A, a ninguna de las ocasiones que le preguntamos y haciendo el ejercicio en la sala, la ubicamos en la dirección donde estaría sentada. Le dijimos... Utilizamos uno de los participantes como si fuera Gorgie, le explicamos, estaría ahí. Y ubicamos al fiscal y luego también dijimos que el licenciado estaría en la misma posición. Desde esa posición te estarían haciendo las preguntas. En ese escenario, ¿crees que podría declarar? Y siempre la respuesta fue sí.

Le pregunté si entendía o si había algo que no había entendido de lo que le habíamos preguntado. Ella dijo que no, que había entendido todo. Pero siempre su contestación fue sí, que podía declarar. Eh, nos parece una niña muy, muy inteligente, muy, eh, perceptiva.

Por tanto, prueba de que, de que podría sentir miedo, ella lo manifestó, pero prueba de que podría sufrir un disturbio emocional serio, la probabilidad de que eso ocurra en la vista, eh, hay ausencia total.

Las manifestaciones, de hecho, que hizo la mamá sobre problemas de dormir, eh, o cambios en conducta, no hubo ningún atisbo de prueba que pudiéramos corroborar con la menor sobre esa... sobre, sobre esas alegaciones de... que, que hizo mamá en sala. Así que, ante la... la consistencia en la menor en sus manifestaciones de que sí, de que podría declarar en presencia del señor, eh, Georgie, ella le llama Georgie, lo identificó como Georgie, eh, fue clara. No, no dudó en ningún momento. Siempre

dijo que sí, que podía declarar (transcripción nuestra).[24]

Tras realizar un cuidadoso análisis de la prueba presentada ante nos y escuchar detenidamente la regrabación de la vista de necesidad, **concluimos que el foro primario erró en su determinación**. Es regla firmemente reiterada que, en nuestro ordenamiento jurídico, las determinaciones que realizan los juzgadores que tienen la prueba ante sí, merecen gran deferencia por parte de los foros apelativos. No empece esta norma, dicha deferencia no es absoluta y la misma cede cuando se prueba que el foro primario "actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018).

La presente controversia gira en torno a la denegatoria a la moción sometida al amparo de la Regla 131.1 de Procedimiento Criminal, *supra*, presentada por el Ministerio Público. En esencia, solicita que el testimonio, en la vista preliminar, de la menor de edad ASPR, víctima de un delito sexual, se haga por el mecanismo de circuito cerrado. Para que dicha solicitud proceda, es necesario determinar "si **existe la probabilidad** de que el declarante sufra **disturbio emocional serio** que le impida comunicarse efectivamente de tener que testificar frente al acusado" (Énfasis nuestro). Véase, Regla 131.1 de Procedimiento Criminal, *supra.*

Ahora bien, la concesión de este procedimiento debe ser sopesado con el derecho constitucional a la confrontación. Sin embargo, en el caso de marras, dicho ejercicio no es necesario, **pues el derecho constitucional que tiene un acusado a confrontar a sus testigos, opera en la etapa de juicio y no en la etapa de vista preliminar como el caso ante nos.** Aun así, vale destacar que en nuestro ordenamiento se ha reconocido que

---

[24] Véase, Anejo 6-B, Regrabación de la vista de necesidad celebrada el 23 de diciembre de 2025, min. 21:39-25:14.

el derecho a la confrontación cede ante el interés público del Estado de proteger el bienestar físico y emocional de los menores testigos que son víctimas de delitos sexuales. *Pueblo v. Santiago y en interés del menor FLR, supra,* pág. 35.

A la luz de la normativa antes expuesta, le correspondía al foro primario aquilatar la prueba ante su consideración y evaluar si la misma demostró la **probabilidad** de que la declarante, en este caso la menor ASPR, **sufriría un disturbio emocional serio** a la hora de testificar frente al Recurrido. Indubitablemente, de la regrabación de los procedimientos se desprende que la menor ASPR, mediante su propio testimonio expresó el **sentimiento de temor o miedo** de ver al Recurrido. De hecho, la menor **reiteró** este temor de ver al señor Domínguez Alejandro **en varias ocasiones a lo largo de su interrogatorio**.

De igual forma quedó establecido mediante el testimonio de la madre de la menor ASPR, que su hija mostró cambios de conducta y tenía problemas para dormir. Contrario a lo dispuesto en las expresiones del honorable juez conforme a que no existe "ningún atisbo de prueba que pudiéramos corroborar con la menor", se desprende de la regrabación que **ni el honorable juez ni la defensa** le hicieron preguntas a la menor dirigidas a si esta tenía problemas para dormir o cambios en su conducta a raíz del incidente. De igual forma, las expresiones de la madre sobre los problemas para dormir y los cambios de conducta que tenía su hija no fueron controvertidas.

Aclarado este asunto, es evidente que el foro primario estimó insuficiente las declaraciones de las testigos referente al sentimiento de temor o miedo manifestado por la menor, o simplemente no le dio credibilidad. En su lugar, el juez que presidió los procedimientos decidió darle mayor valor a las expresiones de la menor respecto a que sí podía declarar frente al

Recurrido. Estas manifestaciones por parte de ASPR, se dieron en contexto de una serie de preguntas que el juez le formuló a la menor, las cuales, a juicio de esta Curia, **constituyeron un testimonio dirigido**. Somos del criterio que el juez que presidió los procedimientos no abordó adecuadamente a la menor en torno a cómo se sentiría si tuviera que testificar frente al Recurrido. Tomemos como ejemplo el siguiente extracto:

> JUEZ: Entonces, para entenderte, de la forma en que yo te expliqué que estaríamos sentados y ubicados y con presencia de los alguaciles, ¿crees que entonces sí podrías declarar delante de Georgie.
> ASPR: Sí.
> JUEZ: Sí. Si yo te **garantizo** que Georgie no te va a hacer nada y no va a intervenir contigo, puede estar Georgie presente en la sala y tú puedes decir las cosas delante de él.
> ASPR: Sí.
> JUEZ: Ok. Pero sí, sí te gustaría que yo, a.... a menos que sea papá, mamá o algún familiar de Georgie, todas las demás personas salgan de la sala cuando tú vayas a declarar.
> ASPR: Sí.
> JUEZ: ¿Eso sí te gustaría? Está muy bien. Entramos a la sala.[25] (transcripción y énfasis nuestro)

Nótese, que el juez pierde de perspectiva que, si bien podría garantizar la integridad física de la menor a la hora de testificar en la vista preliminar frente al Recurrido, el foro primario **es incapaz** de garantizar que la menor sufra **repercusiones de índole emocional ni prever cómo se puede sentir la menor**. En otras palabras, el juez se **centró** únicamente en el aspecto de seguridad física de la menor y dejó a un lado, **la seguridad emocional**, pese a que ASPR **le manifestó en incontables ocasiones su incomodidad y temor de testificar frente al Recurrido.** Ante un testimonio dirigido, y unas expresiones del honorable juez que dejó claramente establecido, quién es la autoridad en sala y que de él depende la decisión de si permite o no que testifique ante el Recurrido, ¿qué alternativas o que capacidad de discernimiento

---

[25] Véase, Anejo 6-A, Regrabación de la vista de necesidad celebrada el 23 de diciembre de 2025, min. 30:53-31:31.

podría tener una menor de ocho (8) años para expresar realmente sus emociones contra aquella persona que manifiesta tiene el total control y autoridad?

En esa misma línea, no se puede pasar por alto que lo que se está evaluando es el testimonio de **una niña de ocho (8) años, víctima de un delito sexual, que ni recordaba la fecha de su nacimiento según surge de sus expresiones.** A la hora de ponderar este tipo declaraciones, los juzgadores de los hechos deben hacerlo con **extrema sensibilidad** y **siempre buscando preservar el mejor bienestar de ese menor.**

Por tanto, somos del criterio que el foro primario **abusó de su discreción** al aquilatar de manera liviana las constantes y reiteradas manifestaciones **de temor** atestadas por la menor y su madre respecto a declarar frente al Recurrido. Por su tierna edad, el desconocimiento que ésta tiene de los procedimientos judiciales y por la naturaleza de los actos de los cuales la menor viene llamada a declarar, no es posible saber con **entera certeza** cómo la menor enfrentaría mentalmente un proceso en el cual tenga que relatar los hechos frente a su presunto agresor.

Ello es suficiente para llegar a la **lógica conclusión** respecto a **que existe una probabilidad de que se cree un disturbio emocional en la menor al ésta testificar frente al Recurrido.**

En ese sentido, el foro primario no tenía más remedio que **proteger a esa menor**, máxime en la etapa de vista preliminar en la cual **no opera el derecho constitucional a la confrontación.** Además, la concesión de un circuito cerrado no crearía ningún perjuicio al Recurrido. De proceder la moción al amparo de Regla 131.1 de Procedimiento Criminal, *supra,* el señor Domínguez Alejandro aún conservaría todos sus derechos estatutarios reconocidos en la Regla 23 de Procedimiento Criminal, *supra.* En

ese sentido, el Recurrido podrá observar a la testigo, escuchar a la menor mientras esta testifica y podrá comunicarse con su abogado, colaborando así en su defensa.

Por consiguiente, a tono con los fundamentos anteriormente esgrimidos, colegimos que el error planteado por el Pueblo se cometió. Por lo tanto, cónsono con los criterios que guían nuestra discreción, corresponde expedir el auto de *certiorari* presentado y revocar el dictamen recurrido. En consecuencia, se concede la solicitud del Ministerio Público para que el foro primario lleve a cabo la vista preliminar con el testimonio de la menor ASPR mediante el sistema de circuito cerrado.

## IV.

Por los fundamentos antes expuesto, expedimos el auto de *certiorari* y revocamos el dictamen recurrido. En consecuencia, se devuelve el caso para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones